IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CENTRAL LABORERS' PENSION, WELFARE AND ANNUITY FUNDS**, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case Number: 08-149-JPG |
| **A & A HAULING, INC.**, and **Steven R. Petroff**, individually, ) ) ) | |
| Defendants. ) | |

**COMPLAINT**

COME NOW, plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, by and through their attorneys, Williams, Caponi, Foley & Eckert, P.C., and for their Complaint against defendants, **A & A Hauling, Inc.** and **Steven R. Petroff**, individually, state as follows:

**Count I
A & A Hauling, Inc.
29 U.S.C. §§ 1132, 1145**

COME NOW plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, by and through their attorneys, Williams, Caponi, Foley & Eckert, P.C., and for Count I of their Complaint against defendant, **A & A Hauling, Inc.**, state as follows:

1. This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132,1145 (hereinafter referred to as "ERISA"). Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2. Plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, are various pension, welfare and related joint labor-management funds and bring this action as "employee welfare benefit funds" and "plans", under the laws of ERISA.

3. Defendant, **A & A Hauling, Inc.**, is conducting business in the State of Illinois, and is an employer as defined under ERISA.

4. An authorized representative of defendant, executed a Memorandum of Agreement, dated October 28, 1996, thereby binding defendant to pay contributions to plaintiffs

for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as exhibit 1 and incorporated by reference herein.

     5.    Exhibit 1 pertinently states:

> **"It is located that this Contract shall cover all of the following Locals located in these counties:**
> **Bond**          Greenville No. 622, Pocahontas No. 677;
> **Calhoun**     Hardin No. 968;
> **Clinton** Carlyle no. 581;
> **Greene** Roodhouse No. 835;
> **Jersey**       Jerseyville No. 646;
> **Macoupin**   Mt. Olive No. 950
> **Madison**    Alton No. 218, Collinsville No. 44, Edwardsville No. 179,
>         Glen Carbon No. 474, Highland No. 680, St. Jacob No.
>         674, Troy No. 382, Wood River No. 338
> **Monroe**     Columbia No. 196
> **Montgomery**  Hillsboro No. 1084, Litchfield No. 84
> **Randolph**    Chester No. 925
> **St. Clair**     Belleville No. 459, Belleville Hodcarriers' No. 197, East
>         St. Louis Hodcarriers' No. 454;
> **Washington**  Nashville No. 548.** Please see Article 2 of exhibit 1.
>
> **"Each Employer shall remit fringe benefit contributions to the fund depository on or before the 15th day of each month for all contributions, attributable to the prior calendar month. Failure to remit such contributions on a timely basis may allow the Union, at its option, the right to refuse Employees or withdraw Employees for the delinquent Employer, a notice in writing five (5) days in advance of the taking of such action. In the vent the delinquent Employer is a subcontractor, such notice shall be served jointly on the general contractor and the subcontractor. The Employer shall be liable for any costs incurred in the connections with the collection of any fringe benefits."** Please see Article 9.1 of exhibit 1.
>
> **"This Agreement shall be effective August 1, 1990 and shall remain in full force and effect thought July 31, 1993. Either party may give notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement Notice to modify the contract with respect to any provisions give by either party shall not terminate the contract and shall not render the automatic renewal clause inoperative."** Please see Article 30 of exhibit 1.

     6.    Defendant has not provided any notice of its intent to terminate said agreement. Defendant is bound by the terms and provisions of exhibit 2, attached and incorporated by reference herein.

     7.    Exhibit 2 pertinently provides:

> **"It is agreed that this Contract shall cover all of the following Locals located in Bond, Calhoun, Clinton, Greene, Jersey Macoupin, Madison, Monroe, Montgomery, Randolph, St. Clair and Washington Counties:**

> **Greenville No. 622; Pocahontas No. 677; Carlyle No. 581; Mr. Olive No. 950; Alton No. 218; Collinsville No. 44; Edwardsville No. 179; Glen Carbon No. 474; Highland No. 680; St. Jacob No. 674; Wood River No. 338; Columbia No. 196; Hillsboro No. 1084; Chester No. 925; Belleville No. 459; Belleville Hodcarriers' No. 197; East St. Louis Hodcarriers' No. 454.** Please see Article 2 of exhibit 2.

> **"Each Employer shall remit fringe benefit contributions to the fund depository on or before the 15th day of each month for all contributions, attributable to the prior calendar month. Failure to remit such contributions on a timely basis may allow the Union, at its option, the right to refuse Employees or withdraw Employees for the delinquent Employer, a notice in writing five (5) days in advance of the taking of such action. In the event the delinquent Employer is a subcontractor, such notice shall be served jointly on the general contractor and the subcontractor. The Employer shall be liable for any costs incurred in the connection with the collection of any fringe benefits."** Please see Article 9.1 of exhibit 2.

> **"This Agreement shall be effective August 1, 1998 and shall remain in full force and effect through July 31, 2003. Either party may give notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement. Notice to modify the contract with respect to any provisions given by either party shall not terminate the contract and shall not tender the automatic renewal clause inoperative."** Please see Article 30 of exhibit 2.

8. In addition, an authorized representative of defendant, executed a Participation Agreement, dated June 23, 1997, thereby binding defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as exhibit 3 and incorporated by reference herein.

9. Exhibit 3 pertinently states:

> **"The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trust establishing and amending the Central Laborers' Pension Fund and Central Laborers' Welfare Fund and all other funds or plans compromising the Funds, all as heretofore and hereafter amended (the Trust agreements), as through the employer had actually signed the same. The various Agreements and Declarations of Trust are hereafter referred to as the "Trust Agreements." The Employer agrees t make contributions to the Funds (1) on behalf of all Employees, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements, (2) for all jobs within the geographical jurisdiction of the Funds, all as defined in the Trust Agreements, (3) for the employment on all job classifications, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements.** Please see paragraph 2 of exhibit 3.

> **"The employer agrees to make the required contributions monthly and in such manner as required by the Trustees of the Funds for all Employees as

>   defined in the Trust Agreements and the Trustees shall have the authority to have their accountant audit all payroll and all wage, job, bonds and other relevant records of the Employer upon reasonable notice for the purpose of determining the accuracy of the Employer's contributions to the Funds." Please see paragraph 4 of exhibit 3.
>
>   "If an employer fails to pay contributions as required by the Trust Agreements and this Agreement, the Funds shall have the right to take whatever steps are necessary to secure compliance with this Agreement and the Trust Agreements, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all reasonable costs of collection of the payments due together with reasonable attorneys' fees and such other reasonable costs and charges as may be assessed by the Trustees of the Funds pursuant to the Trust Agreements, including the cost of any and all audits. In addition, the Employer agrees that all remittances not received by the 15th day of the month next following the month for which the contributions are due are subject to assessment of Liquidated Damages in the amount of 10% of the contributions or $25.00 minimum per remittance, to deter the increased administrative costs resulting from late payments, all pursuant to the Trust Agreements. Please see paragraph 6 of exhibit 3.
>
>   "The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the Funds such Trustees as are now serving, or their successors who will serve in the future, as Employer Trustees together with their successors/ The Employer further agrees to be bound by all actions taken by the Board of Trustees pursuant to the Trust Agreements as heretofore and/or hereafter amended." Please see paragraph 7 of exhibit 3.

10.     Based on the terms and conditions contained in exhibits 1 – 3 defendant is bound by the terms and conditions as set forth in the Restated Agreement and Declaration of Trust establishing the Central Laborers' Pension, Welfare & Annuity Funds. The Restated Agreement and Declaration of Trust is attached hereto as exhibit 4 and incorporated by reference herein,

11.     ARTICLE IV of the Restated Agreement and Declaration of Trust entitled Contributions to the Fund provides, in pertinent part:

>   **Section 1. BASIS OF CONTRIBUTIONS TO PLAN.** In order to effectuate the purpose hereof, each Employer shall contribute to the Fund the amount required by any written agreement as defined herein between the Union or the Trust and the Employer. The rate of contributions shall at all times be governed by the applicable written Agreement then in force and effect, together with any amendments, supplements or modifications thereto provided, however, that in the case of an Employer who is required to make contributions by reason of his being party to a written other than a Collective Bargaining Agreement the amount of the contribution shall be required by the Collective Bargaining Agreement in effect  between the Employer Association and the Local Union having jurisdiction over the geographical area in which the covered Employees perform work. It shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any employee purporting to waive the employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or

other written agreement, With respect to the amount of contributions required thereby no employee shall be permitted to contract or otherwise agree with or permit his employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.**
The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security number, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees of all records of the Employer as described in Article IV, Section 8, in connection with the Employer's contributions and/or reports.

Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent personal liability for owners or partners who are not otherwise incorporated.

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 herein below, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed shall constitute a default in payment pursuant to Section 6 of his Article.

**Section 7. LIQUIDATED DAMAGES.** All Employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provided above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or twenty five dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages and acknowledge the costs to be actual and substantial though difficulty to ascertain; however, each Employer acknowledges these costs to be minimally ten percent (10%) of the delinquent contributions or twenty-five dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

**Section 9. COLLECTION COSTS.** Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including the court fees, attorneys' fees, filing fees, and any other expenses actually incurred by the Trustees in the course of the collections process.

**Section 10. AUDITS AND THE COSTS THEREOF.** The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Pension Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal

counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, audit cost, and any other expenses actually incurred by the Trustee in the court of the action without regard to whether the Employer did or did not owe delinquent contributions. Please see the Restated Agreement and Declaration of Trust, attached hereto as exhibit 4 and incorporated by reference herein.

12.     According to the Trust Agreements, plaintiffs are entitled to collect liquidated damages on all contributions that are paid late. Defendant has incurred liquidated damages.

13.     Defendant is obligated to make fringe benefit contributions to plaintiffs, under the terms of the Memorandum of Agreement (exhibit 1), Memorandum Agreement (exhibit 2), Participation Agreement (exhibit 3) and Restated Agreement and Declaration of Trust (exhibit 4)

14.     Between August, 2003 and June, 2007, an authorized representative of defendant requested from various Local Labor Unions that fall within the jurisdiction of plaintiffs, employees for various construction projects awarded to defendant.

15.     Said employees were then provided to defendant from various Local Labor Unions that fall within the jurisdiction of plaintiffs' employees for various construction projects awarded to defendant.

16.     As an employer obligated to make fringe benefit contributions to plaintiffs, defendant is specifically required to do the following:

        (a)     To pay monthly contributions to the Funds for each employee of the defendant and to make said contributions in a manner as required by the plaintiffs and payment of said contributions are based upon an hourly rate as stated in the applicable agreements;

        (b)     To make all of its payroll books and records available to plaintiffs for the purpose of auditing same, to determine whether defendant is making full payments as required under the applicable agreements;

        (c)     To compensate plaintiffs for the additional administrative costs and burdens imposed by defendant's failure to pay, or untimely payment of contributions, by way of the payment of liquidated damages in the amount of ten percent (10%) of any and all contributions which are not timely received by plaintiffs for a particular month, as specified fully in Paragraph 4(a) above, together with interest as provided in ERISA, 29 U.S.C. §1132 (g).

        (d)     To pay any and all costs incurred by plaintiffs in auditing defendant's payroll records, should it be determined that defendant was delinquent in the reporting or submission of all contributions required of it to be made to plaintiffs;

      (e)      To pay plaintiffs' reasonable attorneys' fees and costs necessarily incurred in the prosecution of any action to require defendant to submit its payroll books and records for audit or to recover delinquent contributions.

17.      Defendant has breached its obligation to plaintiffs and its obligations under the plans in the following respects:

      (a)      Defendant has failed to make payment of contributions and liquidated damages; and

      (b)      Defendant has been delinquent in reporting the hours worked by employees.

18.      Upon careful review of all records maintained by plaintiffs there is a total of two thousand seven hundred forty seven dollars and seventy-five cents ($2,747.75) known to be due and owing from defendant to plaintiffs. Please see the Revised Breakdown of Amounts Due and Owing attached hereto as exhibit 5 and incorporated by reference herein.

19.      The known amounts owed are based upon defendant's failure to submit all required reports; failure to accurately state all hours for which contributions are due on reports previously submitted; or its failure to file reports or contributions in a timely fashion.

20.      Further, there is the possibility that additional contributions and liquidated damages will come due during the pendency of this lawsuit.

21.      Plaintiffs have requested defendant performs its obligations as aforesaid, but defendant has failed and refused to so perform.

22.      Defendant's continuing refusal and failure to perform it obligations to plaintiffs is causing and will continue to cause irreparable injuries to plaintiffs for which plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs, **Central Laborers' Pension, Welfare and Annuity Funds**, pray this Court enter Judgment in their favor and against defendant, **A & A Hauling, Inc.**, as follows:

      (a)      That defendant be enjoined and ordered to submit all delinquent monthly contribution reports to plaintiffs with the information required to be provided thereon, to continue to submit such reports while this is

       pending, and to comply with its contractual obligation to timely submit such reports in the future;

(b) That judgment be entered in favor of plaintiffs and against defendant for all unpaid contributions, liquidated damages, any costs of auditing defendant's records, accrued interest, and plaintiffs' reasonable attorneys' fees and court costs necessarily incurred in this action as specified herein, or as subsequently determined, all as provided for in the plans and in ERISA;

(c) Defendant be decreed to pay to the plaintiffs a sum of two thousand seven hundred forty seven dollars and seventy five cents ($2,747.75) plus whatever sums are determined to be due.

(d) That defendant be decreed to pay all costs attendant to any audit of defendant's payroll books and records;

(e) That defendant be decreed to pay the plaintiffs its reasonable lawyers' fees, together with its costs of suit; and

(f) That plaintiffs have such further relief as may be deemed just and equitable by the Court, all at defendant' cost.

**Count II
Steven R. Petroff
29 U.S.C. §§ 1132, 1145**

  COME NOW plaintiffs, **Central Laborers' Pension, Welfare and Annuity Funds**, by and through their attorneys, Williams, Caponi, Foley & Eckert, P.C., and for Count II of their Complaint against defendant, **Steven R. Petroff**, state as follows:

  1. This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132, 1145 (hereinafter referred to as "ERISA"). Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

  2. Plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, are various pension, welfare and related joint labor-management funds and bring this action as "employee welfare benefit funds" and "plans", under the laws of ERISA.

  3. Defendant, **Steven R. Petroff**, is conducting business in the State of Illinois, and is an employer as defined under ERISA.

  4. Defendant, executed a Memorandum of Agreement, dated October 28, 1996, thereby binding defendant to pay contributions to plaintiffs for employees of defendant within the

jurisdiction of plaintiffs. Said Agreement is attached hereto as exhibit 1 and incorporated by

reference herein.

    5.    Exhibit 1 pertinently states:

> **"It is located that this Contract shall cover all of the following Locals located in these counties:**
> 
> | | |
> |---|---|
> | **Bond** | Greenville No. 622, Pocahontas No. 677; |
> | **Calhoun** | Hardin No. 968; |
> | **Clinton** | Carlyle no. 581; |
> | **Greene** | Roodhouse No. 835; |
> | **Jersey** | Jerseyville No. 646; |
> | **Macoupin** | Mt. Olive No. 950 |
> | **Madison** | Alton No. 218, Collinsville No. 44, Edwardsville No. 179, Glen Carbon No. 474, Highland No. 680, St. Jacob No. 674, Troy No. 382, Wood River No. 338 |
> | **Monroe** | Columbia No. 196 |
> | **Montgomery** | Hillsboro No. 1084, Litchfield No. 84 |
> | **Randolph** | Chester No. 925 |
> | **St. Clair** | Belleville No. 459, Belleville Hodcarriers' No. 197, East St. Louis Hodcarriers' No. 454; |
> | **Washington** | Nashville No. 548. Please see Article 2 of exhibit 1. |
>
> **"Each Employer shall remit fringe benefit contributions to the fund depository on or before the 15th day of each month for all contributions, attributable to the prior calendar month. Failure to remit such contributions on a timely basis may allow the Union, at its option, the right to refuse Employees or withdraw Employees for the delinquent Employer, a notice in writing five (5) days in advance of the taking of such action. In the vent the delinquent Employer is a subcontractor, such notice shall be served jointly on the general contractor and the subcontractor. The Employer shall be liable for any costs incurred in the connections with the collection of any fringe benefits."** Please see Article 9.1 of exhibit 1.
>
> **"This Agreement shall be effective August 1, 1990 and shall remain in full force and effect thought July 31, 1993. Either party may give notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement Notice to modify the contract with respect to any provisions give by either party shall not terminate the contract and shall not render the automatic renewal clause inoperative."** Please see Article 30 of exhibit 1.

    6.    Defendant has not provided any notice of its intent to terminate

said agreement. Defendant is bound by the terms and provisions of exhibit 2,

attached and incorporated by reference herein.

    7.    Exhibit 2 pertinently provides:

> **"It is agreed that this Contract shall cover all of the following Locals located in Bond, Calhoun, Clinton, Greene, Jersey Macoupin, Madison, Monroe, Montgomery, Randolph, St. Clair and Washington Counties:**
>
> > **Greenville No. 622; Pocahontas No. 677; Carlyle No. 581; Mr. Olive No. 950; Alton No. 218; Collinsville No. 44; Edwardsville No. 179; Glen Carbon No. 474; Highland No. 680; St. Jacob No. 674; Wood River No. 338; Columbia No. 196; Hillsboro No. 1084; Chester No. 925; Belleville No. 459; Belleville Hodcarriers' No. 197; East St. Louis Hodcarriers' No. 454.** Please see Article 2 of exhibit 2.
>
> **"Each Employer shall remit fringe benefit contributions to the fund depository on or before the 15th day of each month for all contributions, attributable to the prior calendar month. Failure to remit such contributions on a timely basis may allow the Union, at its option, the right to refuse Employees or withdraw Employees for the delinquent Employer, a notice in writing five (5) days in advance of the taking of such action. In the event the delinquent Employer is a subcontractor, such notice shall be served jointly on the general contractor and the subcontractor. The Employer shall be liable for any costs incurred in the connection with the collection of any fringe benefits."** Please see Article 9.1 of exhibit 2.
>
> **"This Agreement shall be effective August 1, 1998 and shall remain in full force and effect through July 31, 2003. Either party may give notice in writing to the other party sixty (60) days before the contract expiration date that it desires to terminate the agreement. Notice to modify the contract with respect to any provisions given by either party shall not terminate the contract and shall not tender the automatic renewal clause inoperative."** Please see Article 30 of exhibit 2.

8.  In addition, defendant, executed a Participation Agreement, dated June 23, 1997, thereby binding defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as exhibit 3 and incorporated by reference herein.

9.  Exhibit 3 pertinently states:

> **"The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trust establishing and amending the Central Laborers' Pension Fund and Central Laborers' Welfare Fund and all other funds or plans compromising the Funds, all as heretofore and hereafter amended (the Trust agreements), as through the employer had actually signed the same. The various Agreements and Declarations of Trust are hereafter referred to as the "Trust Agreements." The Employer agrees t make contributions to the Funds (1) on behalf of all Employees, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements, (2) for all jobs within the geographical jurisdiction of the Funds, all as defined in the Trust Agreements, (3) for the employment on all job classifications, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements.** Please see paragraph 2 of exhibit 3.

> "The employer agrees to make the required contributions monthly and in such manner as required by the Trustees of the Funds for all Employees as defined in the Trust Agreements and the Trustees shall have the authority to have their accountant audit all payroll and all wage, job, bonds and other relevant records of the Employer upon reasonable notice for the purpose of determining the accuracy of the Employer's contributions to the Funds."
> Please see paragraph 4 of exhibit 3.

> "If an employer fails to pay contributions as required by the Trust Agreements and this Agreement, the Funds shall have the right to take whatever steps are necessary to secure compliance with this Agreement and the Trust Agreements, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all reasonable costs of collection of the payments due together with reasonable attorneys' fees and such other reasonable costs and charges as may be assessed by the Trustees of the Funds pursuant to the Trust Agreements, including the cost of any and all audits. In addition, the Employer agrees that all remittances not received by the 15th day of the month next following the month for which the contributions are due are subject to assessment of Liquidated Damages in the amount of 10% of the contributions or $25.00 minimum per remittance, to deter the increased administrative costs resulting from late payments, all pursuant to the Trust Agreements. Please see paragraph 6 of exhibit 3.

> "The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the Funds such Trustees as are now serving, or their successors who will serve in the future, as Employer Trustees together with their successors/ The Employer further agrees to be bound by all actions taken by the Board of Trustees pursuant to the Trust Agreements as heretofore and/or hereafter amended." Please see paragraph 7 of exhibit 3.

10. Based on the terms and conditions contained in exhibits 1 – 3 defendant is bound by the terms and conditions as set forth in the Restated Agreement and Declaration of Trust establishing the Central Laborers' Pension, Welfare & Annuity Funds. The Restated Agreement and Declaration of Trust is attached hereto as exhibit 4 and incorporated by reference herein,

11. ARTICLE IV of the Restated Agreement and Declaration of Trust entitled Contributions to the Fund provides, in pertinent part:

> **Section 1. BASIS OF CONTRIBUTIONS TO PLAN.** In order to effectuate the purpose hereof, each Employer shall contribute to the Fund the amount required by any written agreement as defined herein between the Union or the Trust and the Employer. The rate of contributions shall at all times be governed by the applicable written Agreement then in force and effect, together with any amendments, supplements or modifications thereto provided, however, that in the case of an Employer who is required to make contributions by reason of his being party to a written other than a Collective Bargaining Agreement the amount of the contribution shall be required by the Collective Bargaining Agreement in effect between the Employer Association and the Local Union having jurisdiction over the geographical area in which the covered Employees perform work. It shall not be a defense to any claim by the Trustees or an Employee for

delinquent contributions from an Employer that such Employer had entered into an agreement with any employee purporting to waive the employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or other written agreement, With respect to the amount of contributions required thereby no employee shall be permitted to contract or otherwise agree with or permit his employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.**
The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security number, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees of all records of the Employer as described in Article IV, Section 8, in connection with the Employer's contributions and/or reports.

Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent personal liability for owners or partners who are not otherwise incorporated.

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 herein below, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed shall constitute a default in payment pursuant to Section 6 of his Article.

**Section 7. LIQUIDATED DAMAGES.** All Employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provided above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or twenty five dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages and acknowledge the costs to be actual and substantial though difficulty to ascertain; however, each Employer acknowledges these costs to be minimally ten percent (10%) of the delinquent contributions or twenty-five dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

**Section 9. COLLECTION COSTS.** Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including the court fees, attorneys' fees, filing fees, and any other expenses actually incurred by the Trustees in the course of the collections process.

**Section 10. AUDITS AND THE COSTS THEREOF.** The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Pension Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, audit cost, and any other expenses actually incurred by the Trustee in the court of the action without regard to whether the Employer did or did not owe delinquent contributions. Please see the Restated Agreement and Declaration of Trust, attached hereto as exhibit 4 and incorporated by reference herein.

12. According to the Trust Agreements, plaintiffs are entitled to collect liquidated damages on all contributions that are paid late. Defendant has incurred liquidated damages.

13. Defendant is obligated to make fringe benefit contributions to plaintiffs, under the terms of the Memorandum of Agreement (exhibit 1), Memorandum Agreement (exhibit 2), Participation Agreement (exhibit 3) and Restated Agreement and Declaration of Trust (exhibit 4)

14. Between August, 2003 and June, 2007, an authorized representative of defendant requested from various Local Labor Unions that fall within the jurisdiction of plaintiffs, employees for various construction projects awarded to defendant.

15. Said employees were then provided to defendant from various Local Labor Unions that fall within the jurisdiction of plaintiffs' employees for various construction projects awarded to defendant.

16. As an employer obligated to make fringe benefit contributions to plaintiffs, defendant is specifically required to do the following:

   (a) To pay monthly contributions to the Funds for each employee of the defendant and to make said contributions in a manner as required by the plaintiffs and payment of said contributions are based upon an hourly rate as stated in the applicable agreements;

   (b) To make all of its payroll books and records available to plaintiffs for the purposes of auditing same, to determine whether defendant is making full payment as required under the applicable agreements;

   (c) To compensate plaintiffs for the additional administrative costs and burdens imposed by defendant's failure to pay, or untimely payment of, contributions, by way of the payment of liquidated damages in the amount of ten percent (10%) of any and all contributions which are not timely received by plaintiffs for a particular month, as specified fully in Paragraph 4(a) above, together with interest as provided in ERISA, 29 U.S.C. § 1132(g);

  (d) To pay any and all costs incurred by plaintiffs in auditing defendant's payroll records, should it be determined that defendant was delinquent in the reporting or submission of all contributions required of it to be made to plaintiffs.

  (e) To pay plaintiffs reasonable attorneys' fees and costs necessarily incurred in the prosecution of any action to require defendant to submit its payroll books and records for audit or to recover delinquent contributions.

17. Defendant has breached its obligation to plaintiffs and its obligations under the plans in the following respects:

  (a) Defendant has failed to make payment of contributions and liquidated damages; and

  (b) Defendant has been delinquent in reporting hours worked by employees.

18. Upon careful review of all records maintained by plaintiffs there is a total of two thousand seven hundred forty seven dollars and seventy-five cents ($2,747.75) known to be due and owing from defendant to plaintiffs. Please see the Revised Breakdown of Amounts Due and Owing attached hereto as exhibit 5 and incorporated by reference herein.

19. The known amounts owed are based upon defendant's failure to submit all required reports; failure to accurately state all hours for which contributions are due on reports previously submitted; or its failure to file reports or contributions in a timely fashion.

20. Further, there is the possibility that additional contributions and liquidated damages will come due during the pendency of this lawsuit.

21. Plaintiffs have requested defendant performs its obligations as aforesaid, but defendant has failed and refused to so perform.

22. Defendant's continuing refusal and failure to perform it obligations to plaintiffs is causing and will continue to cause irreparable injuries to plaintiffs for which plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs, **Central Laborers' Pension, Welfare and Annuity Funds**, pray this Court enter Judgment in their favor and against defendant, **A & A Hauling, Inc.**, as follows:

(a) The defendant be enjoined and ordered to submit all delinquent monthly contribution reports to plaintiffs with the information required to be provided thereon, to continue to submit such reports while this is pending, and to comply with its contractual obligation to timely submit such reports in the future;

(b) That judgment be entered in favor of plaintiffs and against defendant for all unpaid contributions, liquidated damages, any costs of auditing defendant's records, accrued interest, and plaintiffs' reasonable attorneys' fees and court costs necessarily incurred in this action as specified herein, or as subsequently determined, all as provided for in the plans and in ERISA;

(c) Defendant be decreed to pay to the plaintiffs a sum of two thousand seven hundred forty seven dollars and seventy five cents ($2.747.75) plus whatever sums are determined to be due;

(d) That defendant be decreed to pay all costs attendant to any audit of defendant's payroll books and records;

(e) That defendant be decreed to pay the plaintiffs its reasonable lawyers' fees, together with its costs of suit; and

(f) That plaintiffs have such further relief as may be deemed just and equitable by the Court, all at defendant's cost.

By: */s/ Patrick R. Foley*
Patrick R. Foley
#06277005

Williams, Caponi, Foley & Eckert, P.C.
Attorneys for Plaintiffs
30 East Main Street
PO Box 565
Belleville, IL 62220
Telephone:   (618) 235-1550
Facsimile:    (618) 235-8059